UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-402-MOC
3:21-cr-89-MOC-DCK-1

| | |
|---|---|
| **COREY DONNELL JENKINS,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** is before the Court on Petitioner's pro se Amended Motion to Vacate [Doc. 12; see also Doc. 1 (Motion to Vacate)].

I.     BACKGROUND

Petitioner was charged with a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [3:21-cr-89 ("CR") Doc. 1]. Petitioner pleaded guilty pursuant to a written Plea Agreement and he admitted that he is, in fact, guilty of the charged offense. [CR Doc. 21 at ¶ 1]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges…" and, if applicable, an Information pursuant to 21 U.S.C § 851. [Id. at ¶ 3]. The Plea Agreement explains that the offense is punishable by a maximum of 10 years' imprisonment, a fine of $250,000, or both, and three years of supervised release. [Id. at ¶ 4].

The parties agreed to jointly recommend that: a two-point enhancement applies because the firearm was stolen, pursuant to U.S. Sentencing Guideline § 2K2.1(b)(4); the Petitioner would admit one supervised release violation in Case No. 3:13-cr-154, the parties would recommend the

1

minimum sentence for that violation, and the United States would dismiss the remaining violations; three points will be deducted for acceptance of responsibility, if applicable; the career offender or armed career criminal enhancement will apply, if applicable; sentence within the guideline range should be imposed; neither party will seek departure or variance; and the Government will not oppose a sentence at the low end the guideline range. [Id. at ¶ 7].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 6].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 10]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 11].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 12-14]. The Plea Agreement acknowledges that

2

Case 3:21-cr-00089-MOC-DCK   Document 39   Filed 06/26/24   Page 2 of 13

Petitioner had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 15-16]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 22].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On or about January 16, 2021 in Mecklenburg County, … the defendant, Corey Donnell Jenkins ("DEFENDANT") possessed a black Taurus .38 special revolver on his person.
>
> The Taurus .38 special revolver was manufactured outside of the state of North Carolina and therefore travelled in or affected interstate or foreign commerce before being seized by law enforcement on January 16, 2021.
>
> Prior to possessing the firearm on January 26, 2021,[1] DEFENDANT was a 'prohibited person' as set forth in 18 U.S.C. § 922(n) and as described and defined in USSG § 2K2.1 and its official commentary. Specifically, at the time of the offense, DEFENDANT had previously been convicted of one or more offenses punishable by a term of imprisonment in excess of one year and was therefore prohibited from lawfully possessing a firearm.
>
> DEFENDANT knew he had previously been convicted of one or more offenses punishable by a term of imprisonment in excess of one year.
>
> The aforementioned firearm was stolen.

[CR Doc. 20 at 1-2] (paragraph numbers omitted).

On December 20, 2021, a Rule 11 hearing came before a United States Magistrate Judge. See [CR Doc. 22 (Acceptance); CR Doc. 25 (Courtroom Recording)]. Petitioner stated under oath that he received a copy of the Bill of Information, discussed it with counsel, and fully understood

---

[1] This date appears to contain a typographical error.

3

the charge and the maximum penalty that could apply to him. [CR Doc. 22 at 1]. He admitted that he is, in fact, guilty of the charged offense. [Id. at 3]. Petitioner agreed that: he understood that pleading guilty may cause him to be deprived of certain civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 2]. Petitioner acknowledged the rights he was waiving by pleading guilty, and stated his understanding that the case would proceed directly to sentencing. [Id. at 2-3].

The Plea Agreement was summarized in open court. [Id.]. Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id.]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id.]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id.]. Petitioner agreed had enough time to discuss any possible defenses with his lawyer, was satisfied with counsel's services. [Id. at 3].

The Presentence Investigation Report (PSR) scored the base offense level as 24 because the Petitioner committed the instant offense after sustaining at least two felony convictions for controlled substance offenses, *i.e.*, Mecklenburg County Superior Court convictions for "Sell Cocaine" (07CRS218203), and "Possession with Intent to Sell or Deliver Cocaine" (09CRS212300, 09CRS244279) pursuant to U.S.S.G. § 2K2.1(a)(2). [CR Doc. 30 at ¶ 23]. Two-level enhancements were added because the firearm was stolen, and for reckless endangerment during flight. [Id. at ¶¶ 24, 27]. Three levels were deducted for acceptance of responsibility,

4

resulting in a total offense level of 25. [Id. at ¶¶ 30-32]. The Petitioner had 12 criminal history points for offenses including: three convictions for possession with intent to sell or deliver cocaine; sell cocaine; assault on a female; and possession of a firearm by a convicted felon. [Id. at ¶¶ 47, 51, 52, 53, 54]. Two more points were added because the Petitioner committed the instant offense while under a criminal justice sentence for possession of a firearm by a convicted felon. [Id. at ¶ 55]. The criminal history category was, therefore, VI. [Id. at 56]. The resulting guidelines range was 110 to 120 to months' imprisonment followed by between one and three years of supervised release. [Id. at ¶¶ 105, 108].

The Court adopted the PSR without change and sentenced him at the bottom of the guideline range to 110 months' imprisonment followed by two years of supervised release in a Judgment entered on August 31, 2022. [CR Doc. 33; see CR Doc. 34]. On November 3, 2022, the Court entered an Amended Judgment correcting a clerical error. [CR Doc. 35; see Doc. 36]. Petitioner did not appeal.

Petitioner filed a Motion to Vacate in the instant case on June 20, 2023.[2] [Doc. 1]. He argues that: (1) the conviction should be vacated because § 922(g)(1) is unconstitutional pursuant to New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S.Ct. 2111 (2022); and (2) the base offense level was erroneously enhanced pursuant to § 2K2.1(a)(1) because his prior convictions do not qualify as "controlled substance offenses." [Id.]. The Court ordered the United States to respond. [Doc. 2]. The United States argued that the Motion to Vacate should be dismissed or denied because Petitioner's claims are waived and procedurally defaulted, the sentencing guideline claim is not cognizable on collateral review, and the claims are meritless. [Doc. 4]. The Petitioner

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

then moved to amend his Motion to Vacate and sought an extension of time in which to reply to the United States' response. [Docs. 6-9]. The Court granted the Motion to Amend upon receiving no objection by the United States, and it set new response and reply deadlines. [Doc. 11].

The Amended Motion to Vacate was filed on November 27, 2023. [Doc. 12]. Petitioner argues that counsel was ineffective for: (1) advising the Petitioner to plead guilty to violating § 922(g)(1); (2) failing to challenge the constitutionality of § 922(g)(1) on direct appeal; and (3) failing to argue that Petitioner's prior state convictions are not "controlled substance offenses" for purposes of the base offense level. He asks the Court to vacate his conviction and sentence and to dismiss the criminal case. [Id. at 11]. The United States filed a Response arguing that the claims in the Amended Motion to Vacate are time-barred and do not relate back to the original Motion to Vacate, and that the claims in the original Motion to Vacate should be dismissed or denied for the reasons discussed in the original Response. [Doc. 13]. Petitioner has not replied and the time to do so has expired.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments

presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

For an untimely claim relate back to the original timely-filed pleading, it must be shown that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the context of a habeas motion, "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence," such that any claim that relates to the prior conviction or sentence challenged in a habeas motion is considered timely, no matter how long after the original motion it is filed. Rather, a proposed amendment relates back to the date of the original motion if it "state[s] claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005).

An otherwise time-barred petitioner is entitled to equitable tolling in "those rare instances

where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000)("§ 2255's limitation period is subject to equitable modifications such as tolling.").

Here, the Judgment was entered on August 31, 2022 and the Amended Judgment correcting a clerical error was entered on November 3, 2022. Petitioner did not appeal so his judgment became final, at the latest, on November 17, 2022. See Fed. R. App. P. 4(b)(1), (b)(6); United States v. Osborne, 452 F. App'x 294, 295-96 (4th Cir. 2011). While the original Motion to Vacate was timely filed, the Amended Motion to Vacate was filed outside the one-year limitations period on November 27, 2023. Petitioner has failed to demonstrate that the ineffective assistance of counsel claims that he raises in the Amended Motion to Vacate relate back to the original timely Motion to Vacate. United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000) (a defendant's new habeas claim of ineffective assistance of counsel did not relate back to the original claims of improper sentencing enhancements and lack of jurisdiction); Dunnigan v. United States, 2019 WL 8137121 (S.D. W.Va. Feb. 12, 2019) (distinguishing a Sixth Amendment ineffective assistance of counsel claim from one of substantive error because they do not arise from the same core of operative facts); Clinton v. United States, 2011 WL 9688128 at *6 (N.D. W.Va. Aug. 15, 2011) (finding no relation back because claims of ineffective assistance of counsel and a government witness' alleged provision of false and misleading statements at sentencing "necessarily cannot concern the same 'time and type' of conduct" and do not share a common conduct, transaction or occurrence). Nor does he demonstrate that equitable tolling or any other exception applies. Accordingly, the

8

Amended Motion to Vacate is dismissed with prejudice as time-barred.[3]

Had the Petitioner not filed a superseding Amended Motion to Vacate, the original Motion to Vacate would be dismissed and denied. [Doc. 1]. First, the Petitioner's claims of substantive error that were raised in the original Motion to Vacate were waived by Petitioner's knowing and voluntary guilty plea and post-conviction waiver. "[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. Further, unambiguous appellate waivers that a defendant enters into knowingly and voluntarily are generally valid and enforceable. See United States v. Moran, __ F.4th __, 2023 WL 4095937 (4th Cir. June 21, 2023). There is a "narrow class of claims" that the Fourth Circuit has allowed a defendant to raise on direct appeal despite a general waiver of appellate rights. United States v. Lemaster, 403 F.3d 216, 220 n.2 (4th Cir. 2005). Examples include challenges to sentences based on a constitutionally impermissible factor, see United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); sentences imposed beyond the authority of the district court, see United States v. Broughton-Jones, 71 F.3d 1143, 1147-49 (4th Cir. 1995); and cases in which enforcing the waiver would result in a miscarriage of justice, see United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016). Moran, 2023 WL 4095937, at *4 n.3. To establish a miscarriage of justice in enforcing an

---

[3] If the Amended Motion to Vacate had been timely filed, the claims would be dismissed and denied for the reasons set forth in the Government's Response. [Doc. 13].

9

appellate waiver, a defendant need only make a cognizable claim of actual innocence. United States v. McKinney, 60 F.4th 188, 192 (4th Cir. 2023) (declining to enforce an appeal waiver where petitioner showed that the sole offense underling his § 924(c) conviction was subsequently held to not constitute a predicate "crime of violence").

The record conclusively demonstrates that Petitioner's guilty plea was knowingly and voluntarily entered, including the waiver of post-conviction claims other than claims of prosecutorial misconduct and ineffective assistance of counsel. The Petitioner has not attempted to establish that his claims were not waived by the guilty plea or that the post-conviction waiver does not apply. Accordingly, the claims raised in the Petitioner's original Motion to Vacate have been waived.

The claims that Petitioner raised in the original Motion to Vacate are also procedurally defaulted from § 2255 review. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Actual prejudice is shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). Actual innocence means factual innocence; "this standard is not satisfied

10

by a showing that a petitioner is legally, but not factually, innocent." Mikalajunas,186 F.3d at 490.

Petitioner did not raise his § 2255 claims on direct appeal and he has not attempted to demonstrate cause and prejudice or actual innocence to excuse this procedural default. Accordingly, the claims that Petitioner raised in his original Motion to Vacate are procedurally defaulted from § 2255 review.

The claims raised in Petitioner's original Motion to Vacate also fail on the merits. First, Petitioner argues that § 922(g)(1) is unconstitutional pursuant to Bruen, in which the Supreme Court held that the government must justify firearms prohibitions by showing that they are consistent with the nation's historical tradition of firearm regulations. 142 S.Ct. at 2130. Of the questions raised by Bruen, "the facial constitutionality of Section 922(g)(1) is not one of them. Indeed, no federal appellate court has held that Section 922(g)(1) is facially constitutional," and the Fourth Circuit has stated that it "will not be the first." United States v. Canada, __ F.4th __, 2024 WL 2807182, at *1 (4th Cir. June 3, 2024). Accordingly, the Petitioner's facial challenge to § 922(g)(1)'s constitutionality is rejected. Petitioner also purports to raise an "as applied" challenge to his § 922(g)(1) conviction, however, he fails to explain his argument other than citing the Third Circuit's opinion in Range v. Att'y Gen. of the U.S., 69 F.4th 96, 98 (3d Cir. 2023) (en banc). [See Doc. 1 at 8-9]. In Range, the Third Circuit issued a "narrow" holding that § 922(g)(1) was unconstitutional as applied to a defendant who was previously convicted of making a false statement to obtain food stamps. 69 F.4th at 106. Range is not binding precedent and, in any event, it is factually distinguishable. [4] The Petitioner was previously convicted of multiple serious drug offenses, possession of a firearm by a convicted felon, and of a felony assault offense, accordingly,

---

[4] See Canada, 2024 WL 2807182, at *1 (declining to determine the contours of a post-Bruen as-applied challenge to § 922(g)).

11

he has failed to establish that § 922(g)(1) is unconstitutional as applied to him. See, e.g., Ferebee v. United States, 2024 WL 1416574 (D. Md. April 1, 2024) (collecting cases). Accordingly, the Petitioner's § 922(g) challenges are meritless.

Second, Petitioner argues that his prior convictions do not qualify as controlled substance offenses for purposes of U.S.S.G. § 2K2.1. This is a claim of guideline application error that is not cognizable on § 2255 review. See United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999) ("misapplication of the sentencing guidelines does not amount to a miscarriage of justice"); United States v. Foote, 784 F.3d 931, 940 (4th Cir. 2015) (a career offender designation that was subsequently nullified did not amount to a miscarriage of justice where the challenge did not include a claim of actual innocence). This claim is also meritless because the Petitioner's prior North Carolina convictions for selling cocaine, and for possession with intent to sell or deliver cocaine are categorically controlled substance offenses. North Carolina General Statutes make it unlawful to "sell or deliver" or to "possess with intent to … sell or deliver," a controlled substance. N.C. Gen. Stat. § 90-95(a)(1). The Fourth Circuit has held in a published opinion that N.C. Gen. Stat. § 90-95(a)(1) is a "categorical match" match with the Guidelines' definition of a controlled substance offense. United States v. Miller, 75 F.4th 215, 230 (4th Cir. 2023). The Petitioner's reliance on United States v. Locklear, 2022 WL 2764421 at *2 (July 15, 2022), an unpublished opinion, is unavailing. See United States v. Groves, 65 F.4th 166, 173 & n.4 (4th Cir. 2023) (noting that Locklear is unpublished and, therefore, is not binding precedent). Accordingly, the Petitioner's guideline calculation claim would fail on the merits even if it were properly before the Court.

## IV. CONCLUSION

For the foregoing reasons, the Amended Motion to Vacate is dismissed and denied and, alternatively, the original Motion to Vacate is dismissed and denied.

12

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Motion to Vacate [Doc. 12] is **DISMISSED AND DENIED.**

2. Alternatively, the Motion to Vacate [Doc. 1] is **DISMISSED AND DENIED.**

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4. The Clerk is instructed to close this case.

Signed: June 26, 2024

Max O. Cogburn Jr.
United States District Judge